**EXHIBIT  A**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED

JAN 2 2 2015

SUPERIOR COURT OF CALIFORNIA
COUNTY OF FRESNO

BY _____
DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, a foreign corporation; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TODD STONE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| *(El nombre y dirección de la corte es):* Fresno Superior Court | *(Número del Caso):* 15 CE CG 00245 |
| B.F. Sisk Courthouse | |
| 1130 O Street, Fresno, CA 93721-2220 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
T. Steven Gregor, Esq., 2550 Fifth Ave., Ste. 709, San Diego, CA 92103; Tel: 619-238-2700

| DATE: JAN 2 2 2015 | Clerk, by | L. ESPARZA | , Deputy |
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Travelers Property Casualty Insurance Company, a foreign corporation

    under: ☑ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| T. Steven Gregor, Esq. (SBN185707)<br>Gregor Law Offices<br>2550 Fifth Avenue, Suite 709<br>San Diego, CA 92103<br>TELEPHONE NO.: 619-238-2700   FAX NO.:<br>ATTORNEY FOR *(Name):* Plaintiff Todd Stone | **FILED** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO
STREET ADDRESS: 1130 O Street
MAILING ADDRESS:
CITY AND ZIP CODE: Fresno CA 93721-2220
BRANCH NAME: B.F. Sisk Courthouse

JAN 22 2015

SUPERIOR COURT OF CALIFORNIA
COUNTY OF FRESNO
BY
DEPUTY

CASE NAME:
STONE v TRAVELERS PROPERTY CASUALTY INSURANCE CO.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 15CECG00245 |
| | | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☑ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* TWO (2)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: January 15, 2015
T. Steven Gregor
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

| SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO<br>CIVIL DEPARTMENT, CENTRAL DIVISION<br>1130 "O" Street<br>Fresno, California 93724<br>(559) 457-2000 | FOR COURT USE ONLY |
|---|---|
| TITLE OF CASE:<br><br>**Todd Stone vs Travelers Property** | Filed<br>    Fresno County<br><br>JANUARY   22, 2015<br><br>By System |
| **NOTICE OF CASE MANAGEMENT CONFERENCE AND ASSIGNMENT<br>OF JUDGE FOR ALL PURPOSES** | CASE NUMBER:<br><br>**15CECG00245 JH** |

**To All Parties and their Attorneys of Record:**

> This case has been assigned to Judge **Jeff Hamilton** for **all purposes.**
> All future hearings will be scheduled before this assigned judge.

You are required to appear at a Case Management Conference on **MAY     26, 2015 at 01:30 PM in 104** located at **1130 'O' Street, Fresno, California.**

You must comply with the requirements set forth in Fresno Superior Court Local Rules Chapter 2.

Failure to appear at the conference may result in imposition of sanctions, waiver of jury trial, or other adverse consequences.

**Defendants:** Appearance at the Case Management Conference does not excuse you from having to file your response in proper legal form within 30 days after the Summons is served on you. You could lose the case if you do not file your response on time.  If you do not know an attorney, and do not have one, you may call an attorney referral service or a legal aide office (*listed in the phone book*).

> IMPORTANT: This hearing is <u>not</u> a trial. It is for the court to inquire as to the status of the case and to determine what future hearings, including a trial date, need to be set.

### DECLARATION

I declare under penalty of perjury under the laws of the State of California that I gave a copy of the **Notice of Case Management Conference and Assignment of Judge for All Purposes** to the person who presented this case for filing.

Date: **January 22, 2015**              Clerk, by _____ , Deputy
                                                            L. Esparza

1  T. STEVEN GREGOR (SBN 185707)
   GREGOR LAW OFFICE
2  2550 Fifth Avenue, Suite 709
   San Diego, CA 92103
3  Telephone:    (858) 759-3800
   Facsimile:    (858) 759-3805
4
   Attorneys for Plaintiff,
5  TODD STONE

**FILED**

JAN 22 2015

SUPERIOR COURT OF CALIFORNIA
COUNTY OF FRESNO
BY _____
                    DEPUTY

6

7

8

9                    **SUPERIOR COURT OF CALIFORNIA**

10                        **COUNTY OF FRESNO**          15 CE CG 00245

11  TODD STONE,                          )  CASE NO.
                                         )
12              Plaintiff,               )  **COMPLAINT FOR:**
                                         )
13  v.                                   )  **(1) BREACH OF CONTRACT;**
                                         )  **(2) BREACH OF IMPLIED COVENANT**
14  TRAVELERS  PROPERTY  CASUALTY        )  **OF GOOD FAITH AND FAIR DEALING;**
    INSURANCE  COMPANY,  a  foreign      )  **AND DEMAND FOR JURY TRIAL**
15  corporation; and DOES 1 through 10, inclusive, )
                                         )
16              Defendants.              )
    _____)

17      Plaintiff TODD STONE ("Plaintiff") alleges as follows:

18      1.      At all times mentioned herein, Plaintiff is and was an individual residing within the

19  county of Fresno, state of California.

20      2.      Plaintiff is informed and believes, and thereon alleges, that Defendant TRAVELERS

21  PROPERTY CASUALTY INSURANCE COMPANY ("Defendant") is and at all relevant times

22  mentioned herein was, a foreign corporation, duly admitted and licensed to conduct business in the State

23  of California and is and was conducting business in Fresno County, California, including but not limited

24  to doing business as an insurer and issuing insurance policies.

25      3.      The true names and capacities of Defendants DOES 1 through 10, inclusive, whether

26  individual, corporate, associate, or otherwise, are at this time unknown to Plaintiff. Plaintiff is informed

27  and believes and based thereon alleges that at all times herein mentioned, each of the Defendants sued

28  herein as a Doe, whether individual, corporate, associate, or otherwise, is in some way liable or

1

Complaint

1   responsible to Plaintiff on the facts hereinafter alleged, and caused injuries and damages proximately

2   as hereinafter alleged. At such time as such Defendants' true names become known to Plaintiff, Plaintiff

3   will seek leave of court to amend this Complaint to insert their true names and capacities. Plaintiff is

4   further informed and believes and based thereon alleges that at all times pertinent to this Complaint, said

5   Doe Defendants, and each of them were individuals, business entities, and/or organizations residing

6   and/or conducting business in the county of Fresno, State of California.

7       4.     Plaintiff is informed and believes and based thereon alleges that at all times herein

8   mentioned, each of the Defendants was the agent, servant, employee, and/or alter ego of each of the other

9   Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of said

10   agency and/or employment, and with the permission and consent, express and/or implied, of the other

11   Defendants herein, and each of them, with respect to all matters referred to herein.

12       5.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times

13   herein, Defendants were the alter egos of their co-Defendants, and all such Defendants have utilized this

14   alter ego relationship in an effort to defraud and wrong creditors, including but not limited to Plaintiff.

15   As a result, and in order to effect justice herein, the corporate fiction maintained by Defendants must be

16   pierced, and all relief and damages should be awarded against all Defendants jointly and severally.

17       6.     Venue and jurisdiction are proper in this Court, because Defendants have consistently

18   conducted business within the county of Fresno, State of California and have sought and received the

19   benefits and protections of the laws, ordinances, and regulations of the county of Fresno, State of

20   California sufficient to warrant jurisdiction over them. In addition, the real property which is the subject

21   matter of this Complaint, and the acts and omissions sued upon herein occurred within, the county of

22   Fresno, State of California. Further, the amount in controversy in this case exceeds the jurisdictional

23   minimum of this Court.

24   ////

25   ////

26   ////

27   ////

28   ////

**FIRST CAUSE OF ACTION**
(Breach of Contract Against Defendant and DOES 1-5)

7.      Plaintiff realleges and incorporates paragraphs 1 through 6 above as though fully set forth in this Cause of Action.

8.      Prior to June 3, 2013, Plaintiff entered into a Travelers Homesaver contract of insurance in Fresno County, California with Defendant, designated as Policy Number 0KH20493215953663 1 , with a policy period of March 6, 2013 to March 6, 2014 (the "Policy"). Each year, up to and including the present time, Defendant reissued the Policy to Plaintiff.

9.      A true and correct copy of the Policy with endorsements is attached hereto as Exhibit 1 and is incorporated herein by this reference.

10.     The Policy provides in pertinent part that Defendant would insure and indemnify Plaintiff for damage to and loss of the real property located at 2309 N Marks, Fresno, CA 93722 (the "Property.") The Policy also provides coverage for, among other things, loss of use, loss of household furnishings, and debris removal.

11.     Throughout the period of the Policy, Plaintiff regularly paid premiums and performed each act required on Plaintiff's part to keet the Policy in full force and effect. Plaintiff intended and expected thereby to be assured peace of mind and financial and economic security in the event of destruction of damage to the Property.

12.     On June 3, 2013, the Property was damaged by vandalism, a loss which is expressly covered under the Policy. Plaintiff notified Defendant of the loss and made a claim for benefits under the Policy (hereinafter, the "Claim."). Under the terms of the Policy and the laws of the state of California, Defendant became obligated to pay, and Plaintiff became entitled to receive indemnification for, the Claim up to the full value of said loss.

13.     Plaintiff has performed all conditions of the Policy required to be performed on Plaintiff's part, except those that were waived or excused.

14.     Notwithstanding its obligation to do so, Defendant has failed and refused, and continues to fail and refuse, to pay Plaintiff the benefits owed under the Policy, despite demand therefore.

///

3

Complaint

15.     SUCH failure and refusal include but are not limited to the following:

       (a)     The failure and refusal to reimburse Plaintiff for the reasonable cost of repairing the Property;

       (b)     The failure and refusal to reimburse Plaintiff for the reasonable cost of repairing or replacing personal property;

       (c)     The failure and refusal to reimburse Plaintiff for debris removal;

       (d)     The failure and refusal to reimburse Plaintiff for lost rents;

       (e)     The failure and refusal to reimburse Plaintiff for the reasonable cost of related losses; and,

       (f)     The failure and refusal to reimburse Plaintiff in a timely manner for loss of use of the Property.

16.     Such failures and refusals constitute material breaches of the Policy.

17.     Subsequently, Plaintiff asked Ottenberg if Plaintiff could speak directly with a Travelers underwriter so that Plaintiff could discuss the types and amount of insurance coverage she needed and to make sure she was adequately insured.

18.     As a direct and proximate and consequential result of Defendants' breaches of the Policy, Plaintiff has suffered damages under the Policy, including but not limited to loss of contract benefits, loss of use, and loss of rents, loss of interest on money due and owing Plaintiff, in an amount to be determined according to poof at trial.

## SECOND CAUSE OF ACTION
### (Breach of The Implied Covenant of Good Faith and Fair Dealing Against Defendant and DOES 6-10)

19.     Plaintiffs incorporate and reallege paragraphs 1 through 18 above as though fully set forth in this Cause of Action.

20.     At all times herein relevant, Defendant agreed to act in good faith and deal fairly with Plaintiff when Defendant entered into the policy, accepeted preimums from Plaintiff, and undertook to process Pliantiff's claim. Deendant thereby assumes a speial relaionship with, and fiduriary obligations to, Plaintiff, and agreed to abide by those duties. Nevertheless, Defendant resfused and failed to act in good faith and deal fairly with Pliantiff, and breached such obligations, as set forth below in more detail.

4

1      21.    In the absence of a reasonable basis fo rdoing so, and with full knowledge and/or

2  conscioius disregard of the consequences, Defendant has failed and resudled to fully indemnify Plaintiff

3  under the Policy and the laws of the state of California.

4      22.    Defendant engaged and continues to engage in a course of conduct to further its own

5  economic interst and in vilation of its contractual and fiduciary obligations to Plaintiff, including but not

6  limited to:

7          (a)    Misrepresentation of pertinent policy provisions and coverages at issue;

8          (b)    Unreasonable delays in action upon the Claim;

9          (c)    Unreasonable failure to proceed in good faith to agree upon the resonabloe repair

10  methos or cost of repairing the Property;

11         (d)    Unreasonable failure to investigate and reasonably evaluate the Claim;

12         (e)    Unreasonably refusing Plaintiff's request for information, including but not

13  limited to refusing give specific reasons for denial of Policy benefits;

14         (f)    Making an offer to work with a vendor of Plaintiff's choice to effect necessary

15  repairs to the Property, but refusing to work with Plaintiff's choice of vendor;

16         (g)    Unreasonably disregarding repair estimates provided to Defendant by Plaintiff;

17         (h)    Unreasonably failing to reimburse Plaintiff for debris removal or for lost rents;

18         (i)    Other unlawful claims practices according to proof at the time of trial; and

19         (j)    Other wrongful and/or illegal conduct according to roof at trial.

20      23.    Defendant continues to engage in the aforementioned acts, and such conduct and bad faith

21  constitutes a continuing tort and continuing bad faith to Plaintiff, causing Plaintiff continuing damages

22  as described herein beyond the date of the filing of this action.

23      24.    As a direct and procimate result of the aforementioned conduct of Defendant, Plaintiff

24  has bee damaged in a sum in excess fo the jurisdiction of this Court to be determined according to proof

25  at trial of this matter.

26      25.    As a further and direct proximate result of the aforementioned conduct of Defendant,

27  Plaintiff has suffred and ewill continue to suffer in the future, damages under the Policy, plus interest,

28  and other economic and consequential damages, which will be shown according to proof at trial.

5

27.    As a further and direct proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered menal and emotional distress, including but not limited to frustration and anxietey, and thereby incurred general damages in an amount according to proof at trial.

28.    As a further direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered special damages resulting from having lost the use and enjoyment of the Property, and has incurred other necessary and incidental expenses in an amount according to proof at trial.

29.    As a further direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered special and consequential damages resulting from having lost the opportunity to sell  Property, causing a loss in an amount according to proof at trial.

30.    As a further direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered special and consequential damages resulting from having lost the opportunity to commercially develop and lease or sell  Property, causing a loss in excess of several million dollars and according to proof at trial.

31.    As a further direct and proximate result of the aforementioned conduct of Defendant, Plaintiff was obligated to retain and did retain legal counsel to obtain the benefits due under the Policly, and to expend and incur liability for costs of suit, attorneys' fees, and related expenses in an amount not yet fully ascertained but which will be submitted at the time of trial.

32.    Defendant's acts alleged herein were part of Defendant's business practices designed to keep from paying Policy benefits which were and are legitimately owed to the Plaintiff in order to increase the Defendant's profits.  In doing so, and in doing the acts set forth above, Defendant acted despicably, willfully, wantonly, oppressively, fraudulently , maliciously, and in conscious disregard of Plaintiff's rights.  As such Plaintiff seeks exemplary damages in a sum to be set by athe juryt in an amount sufficient to punish Defendant and to prevent Defendant from engage in the same or similar conduct in the future with regard to other policyholders.

///

///

///

///

6

Complaint

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant and DOES 1-10 as follows:

**ON THE FIRST CAUSE OF ACTION**

1.   For damages for failure to provide benefits under the Policy, plus interest, and other economic and consequential damages according to proof at trial;

2.   For general damages for losses resulting from mental anguish and emotional distress according to proof at trial;

3.   For punitive damages according to proof at trial;

4.   For costs of suit incurred herein according to proof at trial;

5.   For attorneys' fees incurred to obtain Policy benefits according to proof at trial; and,

6.   For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues in this action.

DATED:        January 15, 2015              GREGOR LAW OFFICES

                                            By
                                               T. STEVEN GREGOR
                                               Attorneys for Plaintiff,
                                               TODD STONE

7

Complaint

WALTER R REINHARDT INS
499 W SHAW AVE STE 130
FRESNO CA 93704

00119



TODD STONE
7347 N TAMERA AVE
FRESNO CA 93711

Dear Policyholder,

Thank you for allowing us to continue servicing your Homesaver policy. We value you
as a customer and appreciate your loyalty.

Enclosed, you will find new documents that reflect a recent policy change. Please review this package
thoroughly before storing it in a safe place with your original policy.

If you have any questions concerning your policy, please contact your agent at the telephone number displayed
on the attached Declarations. We want to be sure that you completely understand your policy and the protection
we provide.

We appreciate your business and look forward to servicing your insurance needs.

Travelers

_____
_____
_____

000359/00119 F3115AHH 7899 06/20/13

EXHIBIT

"1"

Policy Change
Declarations



## HOMESAVER POLICY

**Named Insured**

TODD STONE
7347 N TAMERA AVE
FRESNO CA 93711

**Your Agency's Name and Address**

WALTER R REINHARDT INS
499 W SHAW AVE STE 130
FRESNO CA  93704

| | |
|---|---|
| **Your Policy Number:**   932159536 663 1 | **For Policy Service Call:** (559) 226-4700 |
| **Your Account Number:**   932159536 | **For Claim Service Call:** 1-800-CLAIM33 |

**Policy Period**
FROM: 03-06-13 To: 03-06-14  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

Change Effective Date: 06-14-13

Reason for Change: Change to Insureds Name

**Location of Residence Premises**
2309 N. MARKS
FRESNO, CA 93722

No Change in Premium

Change to Insureds Address

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - Dwelling | $  303,500 | $   703.00 |
| B - Other Structures | 30,350 | INCL |
| C - Household Furnishings | 2,000 | INCL |
| D - Loss of Use | 30,350 | INCL |

| Section II - Liability Coverages | | |
|---|---|---|
| E - Premises Liability | $  500,000 | $    27.00 |
| F - Medical Payments | 5,000 | INCL |

### Policy Forms and Endorsements

| | | | |
|---|---|---|---|
| HS 663   09 99 | Rental Dwelling Form | | |
| HS 01 04 08 09 | Special Provisions - California | | |
| HS 04 16 09 99 | Premises Alarm Or Fire Protection System | | |
| HS 80 91 07 02 | Limited Fungi, Other Microbes or Rot Remediation | $    5,000 | |
| HS 00 03 08 08 | Special Coverage Maximum Additional Amount     of Insurance - 50% | | |

| **Total Premium** | $   730.00 |
|---|---|

Continued on next page

Insured Copy

Page 1 of 2

PL-8651 1-97   476/0KH204

000340/00119 F3115AHH 7899 06/20/13

**Your Premium Reflects the Following Credits or State Surcharges**

Premises Alarm System-Fire                                           5.0%

**Policy Deductible:** $ 1,000.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated deductible is covered.

**First Mortgagee**

BANK OF AMERICA, NA
ISAOA ATIMA
PO BOX 961206
FORT WORTH, TX 76161
LOAN NUMBER: 6096248403

**Your Insurer:**   Travelers Property Casualty Insurance Company
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

**For Your Information**

The State of California requires that we share this message with you:
WHENEVER THIS COMPANY OR ITS AGENT HAS BEEN UNABLE TO RESOLVE A CONSUMER
COMPLAINT AFFECTING THIS POLICY, THE FOLLOWING STATE AGENCY MAY BE
CONTACTED TO ASSIST THE POLICYHOLDER:

**CALIFORNIA DEPARTMENT OF INSURANCE**
**CONSUMER SERVICE DIVISION**
**300 SOUTH SPRING ST**
**LOS ANGELES, CALIFORNIA 90013**
**TOLL FREE NUMBER: 800-927-4357**

**Earthquake coverage is not included in this policy.**

Thank you for insuring with Travelers. We appreciate your business. If you
have any questions about your insurance, please contact your agent or
representative.

For information about how Travelers compensates independent agents and
brokers, please visit www.Travelers.com or call our toll free telephone
number 1-866-904-8348. You may also request a written copy from Marketing
at One Tower Square, 2GSA, Hartford, Connecticut 06183.

These declarations are part of your Homesaver Insurance Policy, Rental
Dwelling Form 663. If a change number and effective date appear at the top
of this page, these Declarations replace any previous Declarations on that date.

Policy Change
Proposal



## HOMESAVER POLICY

**Named Insured**

TODD STONE
7347 N TAMERA AVE
FRESNO CA 93711

**Your Agency's Name and Address**

WALTER R REINHARDT INS
499 W SHAW AVE STE 130
FRESNO CA  93704

---

**Your Policy Number:**  932159536 663 1
**Your Account Number:**  932159536

**For Policy Service Call:** (559) 226-4700
**For Claim Service Call:** 1-800-CLAIM33

---

**Policy Period**
FROM: 03-06-13 To: 03-06-14  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

Change Effective Date: 06-14-13

Reason for Change: Change to Insureds Name

**Location of Residence Premises**
2309 N. MARKS
FRESNO, CA 93722

No Change in Premium

Change to Insureds Address

---

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - Dwelling | $ 303,500 | $ 703.00 |
| B - Other Structures | 30,350 | INCL |
| C - Household Furnishings | 2,000 | INCL |
| D - Loss of Use | 30,350 | INCL |

| Section II - Liability Coverages | | |
|---|---|---|
| E - Premises Liability | $ 500,000 | $ 27.00 |
| F - Medical Payments | 5,000 | INCL |

**Policy Forms and Endorsements**

| | | | |
|---|---|---|---|
| HS 663 | 09 99 | Rental Dwelling Form | |
| HS 01 04 08 09 | | Special Provisions - California | |
| HS 04 16 09 99 | | Premises Alarm Or Fire Protection System | |
| HS 80 91 07 02 | | Limited Fungi, Other Microbes or Rot Remediation | $    5,000 |
| HS 00 03 08 08 | | Special Coverage Maximum Additional Amount of Insurance - 50% | |

**Total Premium**                                                                $    730.00

---

Continued on next page                    Agent Copy                    Page 1 of 3

PL-8655 1-97    476/0KH204

Policy Change
Proposal



## HOMESAVER POLICY

Named Insured: TODD
                STONE
Policy Number: 932159536 663 1
Policy Period: 03-06-13 To: 03-06-14
Effective Date: 06-14-13

---

### Your Premium Reflects the Following Credits or State Surcharges

Premises Alarm System-Fire                                      5.0%

---

### Policy Deductible: $ 1,000.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated
deductible is covered.

---

### First Mortgagee

BANK OF AMERICA, NA
ISAOA ATIMA
PO BOX 961206
FORT WORTH, TX 76161
LOAN NUMBER: 6096248403

---

Your Insurer:   Travelers Property Casualty Insurance Company
                One of The Travelers Property Casualty Companies
                One Tower Square, Hartford, CT 06183

---

### For Your Information

The State of California requires that we share this message with you:
WHENEVER THIS COMPANY OR ITS AGENT HAS BEEN UNABLE TO RESOLVE A CONSUMER
COMPLAINT AFFECTING THIS POLICY, THE FOLLOWING STATE AGENCY MAY BE
CONTACTED TO ASSIST THE POLICYHOLDER:

**CALIFORNIA DEPARTMENT OF INSURANCE**
**CONSUMER SERVICE DIVISION**
**300 SOUTH SPRING ST**
**LOS ANGELES, CALIFORNIA 90013**
**TOLL FREE NUMBER: 800-927-4357**

### Earthquake coverage is not included in this policy.

Thank you for insuring with Travelers. We appreciate your business. If you
have any questions about your insurance, please contact your agent or
representative.

For information about how Travelers compensates independent agents and
brokers, please visit www.Travelers.com or call our toll free telephone
number 1-866-904-8348. You may also request a written copy from Marketing
at One Tower Square, 2GSA, Hartford, Connecticut 06183.

Continued on next page                Agent Copy                    Page 2 of 3

PL-8655 1-97    476/0KH204

## For Your Information (continued)

These declarations are part of your Homesaver Insurance Policy, Rental
Dwelling Form 663. If a change number and effective date appear at the top
of this page, these Declarations replace any previous Declarations on that date.

GENERAL POLICY/RATING INFORMATION:

| | | | | |
|---|---|---|---|---|
| Rate Tier: STD | Agt Cd: 0KH204 | Commissions | $ | % |
| Terr: 40 | Sub-Agt: | Comm-Hmsvr: | 730.00 | 15.0 |
| Prot Cls: 4 | Trans Type: Change | Comm-EQ: | 0.00 | 0.0 |
| #Fam: 1 | PSO Ind:    A | | | |
| #Apts/Unit: | SPC Case: | | | |
| Yr Built: 1948 | Pay Ind: 01 | | | |
| Constr: Frame | EQ Zone: 02 | | | |
| SVC Ind: 476 | EDI Copy: NO | | | |

PL-8655 1-97    476/0KH204



# A Homesaver Policy Booklet

# from Travelers

## YOUR HOMESAVER POLICY QUICK REFERENCE

**DECLARATIONS PAGE**

    Your Name
    Location of Residence Premises
    Policy Period
    Coverages
    Limits of Liability
    Deductible Amounts

|  |  | Beginning On Page |
|---|---|---|
| | AGREEMENT ................................................................................ | 1 |
| | DEFINITIONS ............................................................................... | 1 |
| **SECTION I** **PROPERTY COVERAGES** | COVERAGE A - DWELLING ............................................ | 2 |
| | COVERAGE B - OTHER STRUCTURES ................................... | 2 |
| | COVERAGE C - HOUSEHOLD FURNISHINGS ........................ | 2 |
| | COVERAGE D - LOSS OF USE ............................................ | 2 |
| | ADDITIONAL COVERAGES ................................................. | 2 |
| | PERILS INSURED AGAINST ................................................ | 4 |
| | EXCLUSIONS ................................................................... | 5 |
| | LOSS DEDUCTIBLE .......................................................... | 6 |
| | CONDITIONS ................................................................... | 6 |
| |     Your Duties After Loss ................................................ | 6 |
| |     Loss Settlement .......................................................... | 7 |
| **SECTION II** **LIABILITY COVERAGES** | COVERAGE E - PREMISES LIABILITY ................................... | 8 |
| | COVERAGE F - MEDICAL PAYMENTS .................................... | 8 |
| | ADDITIONAL COVERAGES ................................................. | 9 |
| | EXCLUSIONS ................................................................... | 9 |
| | CONDITIONS ................................................................... | 11 |
| |     Limit of Liability ........................................................ | 11 |
| |     Duties After Occurrence ............................................. | 11 |
| **SECTIONS I AND II** **CONDITIONS** | CONDITIONS ................................................................... | 12 |
| |     Policy Period ............................................................. | 12 |
| |     Cancellation .............................................................. | 12 |
| |     Nonrenewal ............................................................... | 13 |

HS 663 09 99

## Homesaver Insurance Policy

### Rental Dwelling Form 663

---

### AGREEMENT

---

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

---

### DEFINITIONS

---

In this policy, "you" and "your" refer to the named "insured" shown in the Declarations. "We", "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability" means liability for "bodily injury" or "property damage" arising out of the:

   a. Ownership of such vehicle or craft by an "insured";

   b. Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   c. Entrustment of such vehicle or craft by an "insured" to any person;

   d. Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; and

   e. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   For the purpose of this definition:

   a. Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   b. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles; and

   c. Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

   d. Motor vehicle means a "motor vehicle" as defined in 7. Below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation.

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. The person or organization shown as the named "insured" on the Declarations; and

   b. Any person or organization while acting as real estate manager for you;

   Under both Section I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means the "residence premises" shown in the Declarations.

7. "Motor vehicle" means:

   a. A self-propelled land or amphibious vehicle; or

   b. Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means the one, two, three or four family dwelling shown as the "residence premises" in the Declarations.

"Residence premises" also means other structures and grounds at that location.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or

2. From which any "business" is conducted.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C - HOUSEHOLD FURNISHINGS

We cover your appliances, carpeting and other household furnishings in that part of the "residence premises" regularly rented or held for rental to any person other than an "insured".

### COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total limit for the two coverages that follow.

1. **Fair Rental Value.** If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover its fair rental value. Fair rental value does not include any expenses that do not continue while that part of the "residence premises" rented to others or held for rental is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

2. **Civil Authority.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Fair Rental Value loss as provided under 1. above for no more than two weeks.

The periods of time under 1. and 2. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

### ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the

amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

2. **Reasonable Repairs.** In the event that covered property is damaged by a Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by a Peril Insured Against.

This coverage does not:

a. Increase the limit of liability that applies to the covered property; or

b. Relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION **2.c.**

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", or Vandalism or malicious mischief.

We will pay up to 5% of the limit of liability that applies to the dwelling, for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 90 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, of the type covered under this policy that is owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible per unit to the total amount of any one loss to the property described above, regardless of the number of assessments.

Condition **1.** Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

This coverage is additional insurance.

7. **Glass or Safety Glazing Material.**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because glass or safety glazing material has been broken, except as provided in **a.(2)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

The most we will pay is $100 for any one loss regardless of the number of windows or other covered property involved in the loss.

This coverage does not increase the limit of liability that applies to the damaged property.

8. **Ordinance or Law.**

   a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

   c. We do not cover:

      (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

      (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This coverage is additional insurance.

9. **Inflation Coverage.** We may adjust the limits of liability for Coverages A, B, C and D at the beginning of each successive policy term to reflect increases in the cost of insured property. The amount of such increase will be based on the data provided by the appraisal company shown in the Declarations. Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted limits.

   We will also adjust the limits of liability at the time of a loss by the same percentage pro rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Coverage A during the policy period.

---

## SECTION I - PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A, B and C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the "residence premises".

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

9. **Vandalism or malicious mischief.**

This peril does not include loss:

a. By pilferage, theft, burglary or larceny, but we do cover damage to covered property caused by burglars; or

b. To property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

---

## SECTION I - EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion, **1.a.,** does not apply to the amount of coverage that may be provided for under Additional Coverage **8.** Ordinance or Law;

b. The requirements of which result in a loss in value to property.

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

2. **Earth Movement,** meaning:

a. Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide; mudslide, or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature, unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

3. **Water Damage,** meaning:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

4. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises". But, if the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that Peril Insured Against.

5. **Neglect,** meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War,** including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

**c.** · Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

**8. Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, regardless of whether that "insured" committed or conspired to commit the act causing the loss.

**9. Governmental Action,** meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

---

## LOSS DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I

- Property Coverages that exceeds the deductible amount shown in the Declarations.

---

## SECTION I - CONDITIONS

**1. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   **a.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

   **b.** For more than the applicable limit of liability.

**2. Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy unless there has been full compliance with the duties noted below. These duties must be performed either by you or by an "insured" seeking coverage, if not you.

   **a.** Give prompt notice to us or our agent;

   **b.** Notify the police in case of loss by theft;

   **c.** Protect the property from further damage. If repairs to the property are required, you must:

   **(1)** Make reasonable and necessary repairs to protect the property; and

   **(2)** Keep an accurate record of repair expenses;

   **d.** Cooperate with us in the investigation of a claim;

   **e.** Prepare an inventory of damaged household furnishings showing the quantity, description,

actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   **f.** As often as we reasonably require:

   **(1)** Show the damaged property;

   **(2)** Provide us with records and documents we request and permit us to make copies; and

   **(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

   **g.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **(1)** The time and cause of loss;

   **(2)** The interest of all "insureds" and all others in the property involved and all liens on the property;

   **(3)** Other insurance which may cover the loss;

   **(4)** Changes in title or occupancy of the property during the term of the policy;

   **(5)** Specifications of damaged buildings and detailed repair estimates;

   (6) The inventory of damaged household furnishings described in **2.e.** above; and

   (7) Receipts for additional living expenses incurred and records that support the fair rental value loss.

3. **Loss Settlement.** Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   **a.** Repair or replace any part to restore the pair or set to its value before the loss; or

   **b.** Pay the difference between actual cash value of the property before and after the loss.

5. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   **a.** Pay its own appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

6. **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

   **a.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   **b.** A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is said to be insurance.

7. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy

and the action is started within two years after the date of loss.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   **a.** Reach an agreement with you;

   **b.** There is an entry of a final judgment; or

   **c.** There is a filing of an appraisal award with us.

10. **Abandonment of Property.** We need not accept any property abandoned by an "insured".

11. **Mortgage Clause.**

   The word "mortgagee" includes trustee.

   If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

   If we pay the mortgagee for any loss and deny payment to you:

   **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive

a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**12. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**13. Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**14. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**15. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**16. Concealment or Fraud.** With respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

relating to this insurance.

---

## SECTION II - LIABILITY COVERAGES

Section II of the policy is optional. It applies only if a premium for Coverage E is shown in the Declarations.

### COVERAGE E - PREMISES LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance, or use of the "insured location" and caused by an "occurrence", we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability is exhausted by the payment of settlements or judgments.

### COVERAGE F - MEDICAL PAYMENTS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury";

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining; or

   b. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured.